FREDERICK R. HAINES, on Behalf of Himself and All Other Property Owners in the Town of Hunter, Similarly Situated, Respondent, and TOWN OF HUNTER et al., Intervenors-Respondents, v CITY OF NEW YORK et al., Appellants.

Third Department, March 4, 1976

*W. Bernard Richland, Corporation Counsel (Stephen P.*

*Kramer, L. Kevin Sheridan* and *Gary Mailman* of counsel), for appellants.

*Louis M. Weber* for Frederick R. Haines and others, respondents.

*Heffernan & Brown (Charles J. Brown* of counsel), for Village of Tannersville, intervenor-respondent.

*Athony Bucca* for Town of Hunter, intervenor-respondent.

MAIN, J. Pursuant to authority granted by chapter 724 of the Laws of 1905 and chapter 630 of the Laws of 1923, the City of New York (hereinafter, City), the Town of Hunter (hereinafter, Town) and the Village of Tannersville (hereinafter, Village) entered into an agreement in 1924 whereby, at its own expense, the City agreed, *inter alia,* to construct and maintain a sewer system and sewage disposal plant to collect and treat the sewage of the Town and Village and to make extensions of the sewer lines necessitated by future growth and construction in the two municipalities. For their part, the Town and Village were required to obtain the easements and rights of way necessary for the sewage system and the Village had to make available eight acres of land which it had purchased for use by the City for the sewage disposal plant. As for the Town and Village property owners, they were to be obligated by means of local regulations and ordinances to connect their water using sanitary plumbing to the sewer lines and to keep the house connections provided by the City therefor free from stoppage. Most significantly, the agreement was silent with regard to its duration.

The instant controversy arose after plaintiff Haines became the owner of certain unimproved lands adjacent to the sewer lines in the Village of Tannersville in 1968 and sought permission to connect the plumbing in a prospective housing development on the property to the sewage system. Claiming that it was no longer responsible for the operation of the system and further that, even if it was so responsible, it was not required to expand the sewage disposal plant which was already operating in excess of capacity, the City denied the requested permission and this action ensued.

On this appeal, two basic questions are presented, to wit: what were the intentions of the parties to the 1924 agreement relative to its duration and, assuming that its duration has

not yet run, what are the City's present obligations under the agreement. Ruling in favor of plaintiffs, the trial court declared, *inter alia,* that the agreement was for a reasonable duration which has not yet run and that the City's obligations include the construction of not only necessary additional sewer lines and connections but also any additional disposal plant facilities required to meet increased demand.

Upon our examination of the record in this case, we find ourselves in agreement with the result reached by the trial court. The problem herein plainly stems from the fact that the subject agreement contains no express provision setting forth its duration. Such being the case, the understanding of the contracting parties regarding the duration is doubtful, and we must look to the surrounding circumstances to determine their intentions *(Poel v Brunswick-Balke-Collender Co.,* 216 NY 310; 10 NY Jur, Contracts, § 220). In so doing, we are mindful that courts have often interpreted promises requiring continuing performance, as here, as requiring performance for a reasonable time, and that promises are seldom construed as requiring perpetual performance (1 Williston, Contracts [3d ed], § 38).

Turning now to the situation of the parties in 1924 to ascertain what they could reasonably have intended with regard to the contract's duration, we find that the agreement came about solely because the City needed a sewage system installed in the Town and Village to guarantee the purity of its water supply drawn from that region. While the Town and Village agreed to co-operate with the City in solving its water problem and thereby obtain a sewage system primarily at the City's expense, they had not planned to construct such a system on their own and none was legally required.

According to the City, this situation has now changed, and the Town and Village are presently required to have a sewage disposal system regardless of its benefit to the City's water supply. We find nothing in the record to support this allegation, however, and at the trial even counsel for the City conceded that the present requirement is that the Town and Village in some way refrain from "polluting", though not necessarily by means of a sewage disposal system. Under such circumstances, we find that it would be unfair to absolve the City of its responsibility for maintaining the system and extending it when necessary and to impose the great expense of operating the system on the Town and Village which have

justifiably acted in reliance upon the City's voluntary assumption of said expense.

Should it develop in the future, however, that the Town and Village are legally obligated to have a sewage disposal system, in our opinion this would serve to nullify the entire basis of the 1924 agreement which, as previously noted, was bottomed upon the need of the City, but not the Town or the Village, for such a system. Upon such an occurrence, the reasonable time for performance should be deemed to have run, and the City should be freed from further responsibility for operating the system because, otherwise, it would be compelled to pay for that which the Town and Village have a legal duty to provide anyway.

In conclusion, we would further note that the trial court correctly ruled that the City must construct any additional disposal plant facilities required to meet increased demand. Any other result would, without justification, limit the City's express contractual duty to construct necessary additional sewer lines and connections by rendering the duty meaningless to the extent that the necessary lines and connections exceed existing plant capacity.

The judgment should be affirmed, without costs.

HERLIHY, P.J. (concurring in part and dissenting in part). We agree with the conclusion of the majority that the contract is still a binding and enforceable agreement as against the City. We conclude, however, that the trial court erred insofar as it decreed that the agreement requires the City to construct new or enlarged disposal plant facilities to handle increased population. The critical part of the trial court's decision as adopted by the majority is as follows: "Since there is no express provision in the agreement requiring the City to increase the capacity of the disposal plant, the agreement might be read as requiring only the construction by the City of additional sewer lines and connections without any corresponding obligation to provide additional sewage disposal plant capacity so new building could be served. Such an interpretation, however, is an unreasonable one, and, accordingly, the City's 1924 commitment to serve present and future buildings in the Town and the Village must be construed as including, not only the construction of the necessary sewer lines and connections, but, also, any sewage disposal plant construction which may be required to meet the aforesaid increased demand and the court will so declare."

The agreement does not upon its face require such new construction in the future by the City (see § 6) although it does require the City to maintain and repair and operate the disposal works in section 2 thereof.

Section 3 of the agreement specified that the sewerage system was subject to the approval of the plans and the authorization of funds by the Board of Estimate and Apportionment of the City. The contract specifically refers to a plan already prepared for a sewerage system and disposal works prior to the time when the agreement was entered into. Furthermore, the approval of the agreement as attached thereto by the Board of Estimate and Apportionment was to be for a specified amount of money.

After the original agreement was entered into, it was modified by a written agreement made on February 25, 1925 so that the location of certain lines was changed and the additional cost of such change was to be reimbursed to the City in a specified amount of money by the intervenor-village. Implicit in the contractual arrangement was an intent to limit capital costs to those envisioned by the plans in existence at the time the agreement was entered into and to keep such costs on the part of the City within the amount authorized by the Board of Estimate and Apportionment. While it was envisioned that there would be additional costs incurred by the future construction of sewer extensions to new inhabitants or buildings, there would be no reason to expect such costs to be of any great consequence and obviously the costs would not be related to an enlargement of the disposal plant.

The agreement demonstrates an intent that the City would only be obligated to construct and build a disposal plant of a certain size and capacity as limited by the express or implicit dollar authorization of its Board of Estimate and Apportionment. This limitation upon the agreement is also apparent in sections 1, 4 and 6 of chapter 630 of the Laws of 1923 which expressly require certain approvals from the City's Board of Estimate and Apportionment in regard thereto.

The City has in fact reconstructed and enlarged its disposal plant apparently beyond the original authorization of the Board of Estimate and Apportionment. While this might be considered a practical construction of the contract by the parties thereto, there is no reason that such fact should be construed as imposing upon the City a continuing obligation to so enlarge its facilities.

Upon the agreement the City is obligated to maintain its existing disposal facilities and also its existing collection lines in an efficient manner; however, since it appears that either the present population of the intervenors or their future population will exceed the capacity of the present facilities, the City is entitled to relief to the extent of declaring it is not obligated to construct new or additional sewer disposal plants and that it has no obligation to permit new connections which would exceed the capacity of its current disposal plant when the same is operated in an efficient manner. It appears from the present record that to some extent the present sewer connecting lines might be responsible for any supposed overage of capacity because of needed repairs or sealing which permits water infiltration into the collecting lines.

The judgment should be amended by striking so much of paragraph 4 as requires the City of New York to construct further sewage disposal plant facilities to meet increased demand and inserting in its place a provision that the City is not required to provide new disposal plant facilities or permit new connections which will exceed existing plant capacity, and by striking paragraph 7 thereof in its entirety and by inserting a new decretal paragraph directing a trial of the allegations of paragraph 10 of the defendant's verified answer to the complaint, and, as so modified, affirmed.

KOREMAN and LARKIN, JJ., concur with MAIN, J.; HERLIHY, P.J., and SWEENEY, J., concur in part and dissent in part in an opinion by HERLIHY, P.J.

Judgment affirmed, without costs.